TUCKER, Judge.
This is an expropriation suit in which plaintiff, the governing authority of East Baton Rouge, Parish sought expropriation by order dated October 7, 1969 of two tracts of property designated as Parcels 6-3 and 7-2 on the survey maps incorporated into the record, said parcels of property owned by the defendants. This expropriation was designed for the purpose of improving the drainage of property lying along both sides of the Airline Highway in the general vicinity of the southeasterly corporate limits of the City of Baton Rouge. The whole of the property is one tract of land comprising 8.72 acres lying at the southwesterly quadrant of the intersection of the Airline Highway (otherwise known as U. S. Highway No. 61) and Siegen Lane. In surveying the property and preparing the plats or maps thereof the whole area was divided into two separate tracts with Parcel 6-3 containing 5.50 acres and having a frontage of 1033.54 feet on the Airline and Parcel 7-2 containing 3.27 acres and having a frontage of 195.84 feet on Siegen Lane. This latter tract was separated from the Airline by the old bed of Clay Cut Bayou with about 90 percent of this old bayou or ditch located within the Airline right of way. The new improved drainage was constructed in such, a way that the course of the new canal was moved southerly with the principal southerly movement occurring on Parcel 7-2. That portion of the bed of old Clay Cut Bayou lying on Parcel 6-3 and not touching the Airline appears to be owned and under the control of defendants. From Parcel 6-3 there was required and expropriated for this project 1.15 acres and Parcel 7-2 an area of 1.27 acres. The new canal separates a tract of 0.39 acres from Parcel 6-3, and in its severed condition appears to have a market with only two prospective purchasers, wdio join the severed piece, namely, Erato Realty Corporation and Schmeider-McCain. A very small narrow piece of 0.15 acres has been separated from the main body of Parcel 7-2, and its marketability, because of its shape and limit in size, has effectively been reduced to one prospective purchaser, Erato Realty Corporation. There is a lateral right of way drain expropriated of 30 feet by 140 feet running perpendicular to the Airline practically all of which lies on Parcel 7-2.
The suit was tried on December 11, 1969, and the trial court signed judgment on January 5, 1970 awarding defendants as payment for the taking and expropriation of the subject tracts the sum of $25,120.00; $1,500.00 for the improvements taken, and $3,500.00 for severance damages to the remainders. From the judgment plaintiff appealed, contending that the trial court erred in placing a value of $10,000.00 per acre on the land taken, and fixing the damages to the remainder at the sum of $3,500.00. The Parish does not apparently dispute the value of $1,500.00 placed by the trial court on the improvements taken. The defendants answered contending the worth of the land taken should be fixed at $12,500.00 per acre and that the lateral drain of which the fee ownership remains in the defendants should justify an increase in the severance damages of $5,000.00.
The plaintiff produced two expert witnesses, both of whom, Karl J. Snyder and John Allphin, Jr., had wide and varied experience in the field of real estate appraising, having often been called upon to make appraisals, to give testimony in court about their findings and opinions. The defendants made use of three witnesses, two of whom, John Lejeune and Simon M. Losavio, were qualified as experts in the appraisal of real estate and the other, Robert M. Riley, connected with the Baton Rouge Chamber of Commerce, testified mainly with respect to traffic counts along this part of Airline and proposed road construction which would eventually raise this traffic count greatly.
There are only two points at issue here (1) the determination of the value of the land taken and (2) the severance damages to the remainder caused by the taking. These are factual matters as reflected by the holdings in the cases of State through *292 Department of Highways v. Cenco, Inc., 187 So.2d 162 (La.App.—1966), and State through Department of Highways v. Gielen, et al., 184 So.2d 737 (La.App.—1966) and numerous other judicial expressions.
The expert Mr. Snyder, as did the other appraisers, approached the task by using the market data method in arriving at value and damages. His first comparable was the sale of 44.09 acres sold by Mrs. Maydea Mixon Wilkinson, et al. to McCain & Schmeider on July 12, 1967 for an average price of $4,655.00 per acre. This tract is larger than subject and surrounds defendants’ property with an intervening tract between these pieces owned by Erato Realty Co. on Siegen Lane. The property commonly referred to as the Schmeider tract has both the old bed of the Clay Cut Bayou and the new canal running through the property, but both beds angle to a more southern position away from the Airline than is the case with subject property. Mr. Snyder testified he made various adjustments with reference to this sale in order to make it particularly effective as a comparable here, as was the necessary practice in the consideration of most or all of the other comparables.
The second tract used as a comparable was 29.36 acres of land sold by Prejean to Toomer on April 16, 1969 at an average price of $7,500.00 per acre. This property was on the opposite side of the Airline from the subject in a generally southeasterly direction and toward Gonzales, La. The tract has lengthy frontages on the Airline and Pecue Lane.
Mr. Snyder used as a third comparable a tract of 4.14 acres sold by Giuseppe Bologna to W. G. Davis on March 17, 1969 across the Airline for $49,680.00 after the part of the new drainage system adjacent to that tract had been constructed and improved — a per acre value of $12,000.00; Snyder stated this sale more or less set the higher limits, and he felt the Schmieder-McCain sale more representative of the subject property, though its land area is larger than subject and its purchase antedated the expropriation from the defendants by more than two years.
The witness Snyder, adjusting his com-parables to the subject property, estimated the worth of Parcel 7-2, after adding to the 1.27 acres taken completely the .0964 acres taken for a lateral drain making a total of 1.3664 acres, at the sum of $8,198.40. He calculated the severed 0.15 acre piece to have been damaged in the sum of $702.00, although, if the acreage value before taking was $6,000.00, and the severance of this piece would result in its being reduced in value of $1,000.00, it would appear that this sliver of property would now be worth $150.00 as against $900.00 before taking, and the damages would consequently come to $750.00. Snyder assayed to explain this apparently conflicting differential of $48.00 by saying certain steps and procedures were taken and used acceptable to the appraisal trade in accomplishing the more realistic figure of $702.00. This appraiser’s estimate of value and severance damages on Parcel 7-2, not counting the value of improvements no longer in dispute, comes to the sum of $8,900.40.
Using and adjusting the same compar-ables, Mr. Snyder concluded the 1.15 acres taken from Parcel 6-3 was worth $6,900.00; that .the severance damages suffered by the 0.39 acres cut off by the canal amounted to the sum of $1,290.00, and we again allude to the apparent discrepancy between this last figure, and the sum of $1,950.00 which would be the proper reduction if the severance of the 0.39 acre tract had brought about a reduction in value of $6,000.00 per acre before the taking to an acreage value of $1,000.00 after the taking. Counsel for defendants did not pursue or press Snyder with respect to his giving in detail how this $660.00 differential in severance damages could reasonably be accounted for. This witness estimates the value of the land taken and the damages to the severed portion of Parcel 6-3 at the total sum of $8,-190.00 exclusive of values on the improvements taken not now in dispute. The ap *293 praiser Snyder first visited and checked the property on June 3, 1969, and he states that he did not revise his values upward when he again checked the property shortly before the trial in December of 1969.
The plaintiff also called John Allphin, Jr. as its other expert witness in the field of real estate appraisal. This witness had wide and varied experience in appraising property and had been accepted and testified as an expert in several district courts of this state. Mr. Allphin, a former member of the East Baton Rouge Parish council for a period of eight years, his membership having terminated on January 1, 1969, used the market data approach and the same comparables as Mr. Snyder with difference in emphasis on the three main sales.
This expert opined that Parcel 6-3, having all of its frontage of 1033.34 feet on Airline Highway, was more valuable than Parcel 7-2 with its entire frontage of 195.84 feet lying on Siegen Lane. Therefore, he valued Parcel 6-3 at $6,000.00 per acre, and set a figure of $6,900.00 on the 1.15 acres taken from this piece. He estimated the 0.39 acres severed from this parcel to have been worth before the taking the sum of $2,340.00, and that same had been damaged to the extent of 50% or the sum of $1,170.-00. His total value of property taken and severance damages to remainder reaches the sum of $8,070.00, not including the amount he allotted to the improvements taken.
Mr. Allphin considered that Parcel 7-2 at the outset had a reduced value because it was separated from the Airline Highway by a natural barrier, the old bed of Clay Cut Bayou, and he, therefore, determined that its frontage of some 195.84 feet lay along Siegen Lane. Thus, he concluded that the value of Parcel 7-2 was $5,169.00 per acre. For the 1.27 acre tract taken he attributed a value of $6,564.00; curiously he estimated the area of 0.09 acres for the lateral drain as a whole taking and fixed a value thereon of $465.00; and he computed the 0.15 acres severed to have been damaged 40% of an original value of $775.00 or the sum of $7,339.00, not including improvement value.
Mr. John Lejeune, a competent appraiser, well recognized in the profession, and having some ten years experience therein, using the market data approach and substantially the same comparables as those used by plaintiff’s experts, reasoned that the property could best be valued as two separate tracts, opining that, while the highest and best use of the property from a general standpoint lay in the categories of commercial and light industry, he would assign for Parcel 6-3 with its 1033.54 feet of abutting frontage on the Airline use as a truck stop for a major oil company, and a specific use to Parcel 7-2 as a storage and sales area for light industrial equipment.
Mr. Lejeune determined that subject land was worth $12,500.00 per acre, and he makes no distinction in the valuations which he places on Parcels 6-3 and 7-2, though he considers Parcel 6-3 to front entirely on the Airline, and Parcel 7-2 to have its frontage on Siegen Lane. He reaches a value for 2.42 acres taken of $30,250.00. He finds that of the original value of $4,875.00 on 0.39 acre tract severed there remains only $500.00 worth of property, and, consequently, a severance damage figure of $4,375.00, and he decides the 0.15 acre tract separated in Parcel 7-2 has suffered damages of $1,-775.00, with the remainder worth only $100.00. Lejeune ascribes the amount of $30,250.00 for the property taken, the composite sum of $6,150.00 for severance damages or the total sum of $36,400.00, not counting his estimate of the improvements taken.
Simon Losavio, also called and accepted as an expert witness, testified for the defendants that the property was worth $13,-500.00 per acre, and cited the sales of two properties which he considered as compar-ables with one of the tracts bringing $17,-000.00 per acre and the other $15,700.00 per acre. His statement or explanation, if it can be called such, as to the reason why he assigned the seemingly low value of $13,-500.00 per acre when the two comparables *294 on which he placed the most reliance in his calculations reflected a much higher value was to the effect that other realtor-appraisers had told him the subject property “is worth even less than this”. Mr. Losavio assigned a value for the part taken of $32,-670.00 and damages to the total 0.54 acres severed of $6,197.00. Losavio’s composite sum for value and damages is $38,867.00. He also stated he believed that the entire remaining tract was more suitable, for a large oil and gas service station, and apparently disagreed with dividing the property into two separate tracts in order to bring about the highest and best use of the total property. He did say, however, that the property’s use could be well served in the light industrial or equipment category.
As can be observed the experts disagree substantially on the figures reached by them in the fixing of property value and severance damages. Testimony was offered and admitted by the trial court over the objection of plaintiff with respect to the joining of Sherwood Forest Boulevard and Siegen Lane to form a major link between Interstate No. I — 10 and Interstate No. 1-12. The experts seemed to agree that such an artery was in the offing and planned, but the time and nature of the probable construction and other details do not appear in the record. Conceivably such testimony may constitute conjecture and speculation, but in this instance, while some aspects of the conclusions reached by the experts on the subject at hand may have been to a degree influenced by speculation, the testimony and documents in the record support the decision of the trial judge.
As previously stated the problems presented on this appeal involve questions of fact, and there is nothing in the record indicating palpable error in the trial court’s award, nor was it manifestly excessive or for that matter manifestly inadequate. The court is aware of the fact that the acreage owned by defendants is much lower in elevation than is the property across the Airline Highway, and especially higher directly across the Airline. The record also reflects that practically all of the development along this artery, U.S. No. 61, has been on the opposite side of the Airline, running in both northwesterly and southeasterly directions. There is no business, industrial or residence construction on the defendants’ side of the Airline in this area going southeasterly toward Gonzales.
We adhere to the principle, so well recognized in our jurisprudence, that in the absence of manifest error the findings of fact by the trial court shall not be disturbed.
For the reasons assigned the judgment of the lower court is hereby affirmed, and the appellant is cast with such court costs as are attributable to it by law.
Judgment affirmed.